IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| C.L. and M.L., minors, by and through C.A.L., as their motion and next friend,<br><br>    Plaintiffs,<br>  v.<br><br>Village of Riverside, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 13 C 1476<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM OPINION AND ORDER

On March 1, 2013, plaintiffs sued the Village of Riverside, several Village employees (each in his individual capacity), and a handful of individual residents of Riverside and nearby communities, alleging violations of privacy under the Constitution and state law.[1] Now before me are four motions to dismiss, brought by defendants Battersby, Lescher, and, in two separate motions, the Village Defendants. Also before me is defendant Robling's motion for judgment on the pleadings. For the reasons that follow, I grant each of the motions.

I.

---

[1] I refer to the Village and its employees collectively as the "Village Defendants" and to the individual community members as the "Individual Defendants."

Except where noted, the following facts are taken from the complaint, and I accept them as true for the purposes of this motion. At different times, C.L. and M.L., (to whom I sometimes refer collectively as the "minor plaintiffs,") each told their mother, C.A.L., that their father, from whom C.A.L. is divorced, had sexually abused her. After M.L.'s report of abuse in the spring of 2009, C.A.L. called the Department of Children and Family Services ("DCFS"), which opened an investigation. Then, after C.L.'s report of abuse in June of 2011, C.A.L. again contacted DCFS, which opened another investigation and assigned it to the same investigator as the first. This investigator told C.A.L. to report her daughters' allegations of abuse to the Riverside Police Department ("RPD"). Pursuant to the investigator's instructions, C.A.L. met with defendant Krull at the RPD, explained that she had been directed by DCFS to report her daughters' allegations, and stressed "the need for confidentiality regarding the report, because of the sensitive nature of the information and because C.A.L. served as Principal in a Riverside school district." Cmplt. ¶ 18. Krull assured C.A.L. that the reports would be kept confidential.

RPD began investigating the reports of abuse by the father of M.L. and C.L. While these investigations were ongoing, M.L. and C.L. described abuse by additional individuals: defendant Susan Corrigan (and her husband, who is not a party here), and a

2

part-time teacher at the school where C.A.L. was the principal and M.L. was a student (also a non-party). This teacher also babysat for C.L. and M.L., and I follow the parties' lead in referring to her here as "the babysitter."

In October of 2011, Krull met with the babysitter and her lawyer at the RPD. After the interview, the babysitter[2] requested and received a copy of Krull's police investigative report. In November of 2011, following the RPD's closure of its investigation as unfounded,[3] defendant Battersby, who is the babysitter's father, submitted a request for the investigative report pursuant to the Freedom of Information Act (FOIA). Krull provided Battersby with a copy of the police report, which may

---

[2] Actually, it was the babysitter's attorney, Bruce Rose, who is alleged to have requested and received the report, not the babysitter herself. But since it appears from the allegations—and plaintiffs have not argued anything to the contrary—that Rose obtained the report solely in his capacity as the babysitter's agent, I treat Krull's disclosure of the report to Rose as if it had been to the babysitter herself.

[3] The fact that RPD closed its investigation as "unfounded" is taken from an unredacted copy of the police report, which was filed under seal at DN 66. I may consider this document in resolving defendants' motions because, although not attached to the complaint, it is referred to therein and is central to plaintiffs' claims. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing cases).

3

have been redacted to remove the minor plaintiffs' names.[4] Battersby then gave a copy of the report to defendant Lescher.

Plaintiffs allege that sometime around February of 2012, Lescher distributed copies of the report to "former PTA Board Members" because Lescher "was concerned about C.A.L. continuing as the local school's Principal in light of C.A.L.'s alleged lies and dishonesty in reporting her daughters' abuse allegations to the RPD." Cmplt. ¶ 35. Defendants Battersby and Corrigan also distributed copies of the report, in September of 2012, to the District 96 School Board, prompting counsel for the Board to meet with defendants Malina, Scalera, Weitzel and Krull to determine how the report had been publicly released. Malina allegedly explained that RPD released an unredacted copy of the report to the babysitter pursuant to a subpoena (which plaintiffs claim was "faulty on its face") and a FOIA request (which plaintiffs allege Krull asked the babysitter after the fact to submit to "cover" his release of the report). Malina, Scalera, and Weitzel further explained that RPD released a redacted report to Battersby because he was related to an individual in the investigations and knew the facts of the investigation.

---

[4] The complaint suggests at ¶ 41 that the report Battersby received was indeed redacted. It is true, as plaintiffs insist, that the complaint does not unequivocally state that the report Battersby received was redacted, but I disagree with plaintiffs that they are entitled to discovery on this issue, since, as is evident from the discussion below, nothing hinges on it.

In December of 2012, defendant Robling allegedly circulated the police report to "over 90 Riverside community members" by email, "in an attempt to solicit community members to run for the District 96 School Board." Cmplt. ¶ 43.

II.

The pending motions raise numerous arguments, not all of which require examination. The following discussion organizes defendants into groups whose motions present analytically similar issues and resolves the motions by identifying one or more that is dispositive with respect to each group.

<u>The Individual Defendants</u>

The legal standard is the same for both the Rule 12(b)(6) motions to dismiss brought by defendants Battersby and Lescher and the Rule 12(c) motion for judgment on the pleadings brought by defendant Robling. *Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004). To survive these motions, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

As to these defendants, the complaint alleges, in short, that Battersby requested and received the police report pursuant to FOIA, that he gave the report to Lescher, and that the two of them distributed it to others in the community. The complaint

5

likewise alleges that defendant Robling distributed the report to community members.

Plaintiffs insist that this conduct is actionable as the unlawful public disclosure of private facts. To prevail on this theory, plaintiffs must prove that: "(1) publicity was given to the disclosure of private facts; (2) the facts were private, and not public, facts; and (3) the matter made public was such as to be highly offensive to a reasonable person." *Miller v. Motorola, Inc.,* 560 N.E. 2d 900, 902 (Ill. App. Ct. 1990). Plaintiffs must further demonstrate that the disclosed facts were not of legitimate public concern. *See, e.g., Cordts v. Chicago Tribune Co.*, 860 N.E.2d 444, 447 (Ill. App. Ct. 2006); *Doe v. TCF Bank Illinois, FSB*, 707 N.E. 2d 220, 221 (Ill. App. Ct. 1999); *Green v. Chicago Tribune Co.*, 675 N.E. 2d 249, 252 (Ill. App. Ct. 1996); *Grossman v. Smart*, 807 F. Supp. 1404, 1414 (C.D. Ill. 1992).[5]

---

[5] Although the frequently-cited *Miller* formulation articulates only the first three elements, these cases interpret *Miller* to require plaintiffs to prove, in addition, that the matter disclosed was not of legitimate concern to the public. This factor is indeed central to plaintiffs' claims, regardless of whether it is they who bear the burden of pleading and proving it, or whether it is the Individual Defendants who must establish the contrary to prevail on a First Amendment affirmative defense. I need not sort the matter out here, however, because "whether speech involves a matter of public concern is an issue of law," *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009), which in this case I can resolve on the face of the complaint, regardless of who bears the ultimate burden.

Plaintiffs' privacy claim as to these defendants fails because 1) Battersby lawfully requested and received the report from the RPD, and 2) the report concerns a matter—allegations of sexual abuse by a public school teacher and members of the local community—in which the public has a legitimate interest. *See Florida Star v. B.J.F.*, 491 U.S. 524, 534 (1989) ("[w]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release. … 'By placing the information in the public domain…the State must be presumed to have concluded that the public interest was thereby being served.'" (quoting *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975)).

The complaint explicitly alleges that "Battersby…submitted a FOIA request for the report and Krull provided him with a copy of the report." That defendants Malina, Scalera, and Weitzel are alleged to have released the report to Battersby "because he was related to an individual in the investigation and knew the facts of the investigation," makes no difference because the *Florida Star* analysis does not consider the government's reasons for releasing the information, or the correctness of its decision to do so. Indeed, even if the government's disclosure was unlawful, *Florida Star* explicitly protects the *recipient* of the information from liability for its further dissemination. *Id.* at 536; *see also Bartnicki v. Vopper*, 532 U.S. 514, 525 (2001) (dissemination

7

of information by individual who obtained it lawfully is protected by First Amendment, even if the information was previously obtained unlawfully by a third party).

As the *Florida Star* Court explained, the government's disclosure amounts to an "implied representation[] of the lawfulness of dissemination," upon which the public is entitled to rely. 491 U.S. at 536. Indeed, the Court has observed on numerous occasions that "once the truthful information was 'publicly revealed' or 'in the public domain' the court could not constitutionally restrain its dissemination." *Florida Star*, 491 U.S. at 535 (*quoting* the summary in *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103 (1979) of *Oklahoma Publishing Co. v. Oklahoma County District Court*, 430 U.S. 308 (1977)). Accordingly, even assuming, as plaintiffs insist, that the police record was "exempt from disclosure" under Illinois law, and that defendant Lescher's own FOIA request for the report was denied, the constitution protects the Individual Defendants from civil liability for further disseminating the report.

Moreover, plaintiffs do not dispute that the local community had a legitimate interest in the police report. They insist, however, that the public's legitimate interest does not extend to "the explicit and prurient details" of the minor plaintiffs' allegations. Accordingly, they argue, their claim is actionable

8

under Illinois law, and the Individual Defendants' disclosure is not protected by the First Amendment.

It is fair to assume that details about the sexual abuse of minors falls within the scope of "highly personal information…that most people are reluctant to disclose to strangers." *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010). Indeed, as plaintiffs repeat endlessly throughout their briefs, Illinois law prohibits the disclosure of such information in many circumstances. Nevertheless, the Individual Defendants cannot be held liable for disseminating a lawfully obtained police report that touches on matters of legitimate public concern, even if the report also contains private details falling outside the scope of public's interest. The *Florida Star* Court addressed this very issue and explained that it could not, consistent with the First Amendment, impose liability for the release of private information where that information was contained within a police report that generally involved a matter of public significance:

> It is clear, furthermore, that the news article concerned "a matter of public significance," in the sense in which the *Daily Mail* synthesis of prior cases used that term. That is, *the article generally, as opposed to the specific identity contained within it*, involved a matter of paramount public import: the commission, and investigation, of a violent crime which had been reported to authorities.

*Id*. at 536-537 (internal citations omitted) (emphasis added). Accordingly, it is enough to trigger the Individual Defendants'

9

First Amendment protections (and to defeat plaintiffs' state law claim) that the police report concerned, as it unquestionably did, issues of legitimate public concern.

The Village Defendants

A. The Village of Riverside

Although counsel for the Village Defendants is oddly silent on the issue, plaintiffs' federal claim against the Village of Riverside is plainly flawed for its failure to plead any basis for municipal liability under *Monell v. Dept of Social Services of New York*, 436 U.S. 658, 694 (1978). *Monell* teaches that a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom…inflicts the injury that the government as an entity is responsible under § 1983." *Id*. Because the complaint raises no suggestion of any Village "policy or custom," it fails to state a viable *Monell* claim.

Plaintiffs' state law claim against the Village also fails because its liability is premised on the doctrine of respondeat superior, and, as discussed below, each of plaintiffs' claims against Village employees fails.

B. Malina, Scalera, and Weitzel

Even assuming that defendant Krull's disclosure of the police report was unconstitutional (an issue I ultimately do not decide), it is clear from the complaint that no liability

10

pursuant to 42 U.S.C. § 1983 flows from the only unlawful acts attributed to these defendants: their putative "ratification" of Krull's conduct. As plaintiffs acknowledge, § 1983 liability premised on ratification would require that these defendants "ignored, approved or knew about the unconstitutional conduct *as it took place*." Pl.'s response at 11 [DN 80] (emphasis added) (citing *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182-83 (7th Cir. 1994) (declining to hold police chief liable on ratification theory based on chief's after-the-fact efforts to justify and explain officer's unconstitutional conduct)). Nothing in the complaint suggests that these defendants were even aware of the report—much less of Krull's disclosure of it in October and November of 2011—until, at the earliest, September of 2012. Indeed, the only conduct attributed to these defendants occurred in October of 2012, long after the allegedly unconstitutional disclosures had been accomplished.[6] Like the defendant in *Kernats*, they "could have done nothing to undo" the violation,

---

[6] Plaintiffs point specifically to paragraphs 39 and 41 of the complaint as putative support for their claims under the relevant standard. But paragraph 39 describes a meeting and discussion alleged to have taken place in October of 2012, while paragraph 41 merely alleges that these defendants "stated that RPD released a redacted report to Battersby because he was related to an individual in the investigation and knew the facts of the investigation." Neither of these paragraphs can reasonably be read to allege that Malina, Scalera, or Weitzel "ignored, approved, or were aware of" Krull's release of the report at the time it occurred.

11

and their *ex post* efforts to explain it simply do not give rise to § 1983 liability. *Id*. at 1183.

Plaintiffs' state law claim against these defendants fares no better. Not one of the cases plaintiffs cite imposes liability on defendants who, like Malina, Scalera, and Weitzel, were not alleged to have known about or participated in the challenged disclosure.[7] Plaintiffs cannot gloss over their lack of authority by lumping all of the defendants together as they do when they argue, for example, that "Defendants distributed a copy of the police report to the babysitter," and "Defendants distributed a copy of the policy report to Battersby." Pl.'s Resp. at 9 [DN 76]. Plaintiffs cite no legal principle for holding these specific defendants liable under Illinois' common law of privacy based on the conduct they attribute to them.

C. Detective Krull

Finally, I turn to the defendant directly responsible for the report's initial disclosure. The complaint alleges that Detective Krull released the police report to two individuals—the

---

[7] It is true that in *Browning v. AT&T Corp*., 682 F. Supp. 2d 832 (N.D. Ill. 2009), I declined to dismiss a public disclosure claim against a defendant not alleged to have made the disclosure, but that was because—as I explained at some length—the complaint presented a factual issue as to whether the defendant who actually made the disclosure was acting as the non-disclosing defendant's agent. *Id*. at 839-40. The complaint in this case raises no such issue.

12

babysitter and defendant Battersby—and asserts both federal and state privacy claims based on these disclosures.

Krull argues that he cannot be held liable under federal law because qualified immunity insulates him from liability for the alleged disclosures. The defense of qualified immunity "shields a government official from liability for civil damages unless his or her conduct violates a clearly established principle or constitutional right of which a reasonable person would have known at the time." *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the Seventh Circuit has explained, qualified immunity "provides 'ample room for mistaken judgments' and protects all but the 'plainly incompetent and those who knowingly violate the law.'" *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (citations omitted).

Ascertaining whether the doctrine applies involves a two-part inquiry: "(1) whether the facts alleged, taken in the light most favorable to the plaintiff, amount to a constitutional violation; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation." *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012). Addressing only the second question, as I am free to do, *see Pearson v. Callahan,* 555 U.S. 223 (2009), I conclude that Krull is indeed entitled to qualified immunity.

To establish that a constitutional right was clearly established, a plaintiff must show "that a violation of this right has been found in factually similar cases, or that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case." *Lee v. Young*, 533 F.3d 505, 513 (7th Cir. 2008). Plaintiffs point to two cases they claim clearly establishes the right they invoke here: *Wolfe v. Schaefer*, 619 F.3d 782 (7th Cir. 2010) and *L.S. v. Mount Olive Bd. of Educ.*, 765 F. Supp. 2d 648, 662 (D. N.J. 2011).[8] But neither of these cases comes close to establishing a constitutional privacy right in a police investigative report that would preclude the report's disclosure to a subject of the investigation, or indeed to any member of the legitimately interested public.

Plaintiffs' reliance on *Wolfe* is particularly ill-advised. In that case, the court rejected a federal privacy claim alleging the public disclosure of private information, noting first that "[t]he Court has never held that the disclosure of private

---

[8] Plaintiffs also assert that *Groh v. Ramirez*, 540 U.S. 551 (2004), bears sufficient similarity to this case to defeat qualified immunity. In *Groh*, the Court held that a police officer who prepared a facially deficient search warrant was not entitled to qualified immunity in a suit asserting an invalid seizure. *Groh* has no bearing on the analysis here, however, because nothing hinges on whether Krull's disclosure of the report was pursuant to a subpoena.

14

information denies due process." 619 F.3d at 784-85. The court went on to observe that despite the Supreme Court's suggestion, in *Whalen v. Roe*, 429 U.S. 589 (1977), that "there might be a due process right to the nondisclosure of certain private information," the Court since then "has seemed more interested in limiting the right of informational privacy than in its recognition and enforcement." *Wolfe*, 619 F.3d 782 at 785. While it is true, as noted above, that *Wolfe* generally recognized "a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information," *id.*, it likewise acknowledged that this right is "defeasible" in the public interest. Nothing about *Wolfe* establishes that a police officer violates the constitution by disclosing a police report in which the public has a legitimate interest.

*Mount Olive* is just as far afield. In that case, public school teachers and administrators were held liable for knowingly disclosing a student's psychiatric evaluation to a classroom of his peers. Not only is that scenario factually distinct from the one here, it is analytically dissimilar because it lacks the element of the public's legitimate interest in the matter disclosed. It plainly does not clearly establish the constitutional right plaintiffs claim.

In short, Krull is entitled to qualified immunity under federal law based on his alleged conduct because plaintiffs have not asserted a clearly established constitutional right, regardless of whether his conduct amounts to a constitutional violation.

Plaintiffs' state law privacy claim against Krull likewise fails because, as discussed above, the public had a legitimate interest in the police report, even if it did not have a legitimate interest in all of the details contained in it.[9] Moreover, plaintiffs allege that Krull disclosed the police report to only two people. Yet, the publication element of public disclosure claims generally requires "communicating private information to the public at large or to a smaller group of people with whom the plaintiff has a special relationship." *Prince v. Campbell*, 314 F.Supp.2d 793, 796 (N.D. Ill. 2004); *Cordts v. Chicago Tribune Co.*, 860 N.E.2d 444, 450 (Ill. App. Ct. 2006). Here, the complaint fails to allege any reasonable basis for concluding that the individuals to whom Krull released the report had the kind of "special relationship" that Illinois law excepts from the general publicity rule.[10]

---

[9] *See* note 2, supra, and accompanying text.
[10] The parties spend significant time on whether these individuals had a "natural and proper" interest in the information disclosed. But this issue need only be addressed if plaintiffs have sufficiently alleged the kind of "special relationship" that is exempt from the general rule requiring publication to the public at large. *See Cordts*, 860 N.E. 2d at

16

III.

For the foregoing reasons, the pending motions to dismiss and for judgment on the pleadings are granted. Plaintiffs' complaint is dismissed.

**ENTER ORDER:**

**Elaine E. Bucklo**

United States District Judge

Dated: August 27, 2013

---

451 (explaining that individuals with a "natural and proper interest" are outside the scope of the "special relationship" exception).